JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7192 | **DATE** | 11/20/2002 |
| **CASE TITLE** | Gomez vs. Pierson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying the petitioner's petition for a writ of habeas corpus. Judgment is therefore entered in favor of the respondent and against the petitioner. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 21 2002 | 30 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/20/2002 | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice MPJ | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE UNITED STATES OF AMERICA ex rel. )
ARIEL GOMEZ,                          )
                                      )
            Petitioner,               )
                                      )
       v.                             )   No.  01 CV 7192
                                      )
MARK A. PIERSON,                      )
                                      )
            Respondent.               )

**DOCKETED**

**NOV 2 1 2002**

## MEMORANDUM OPINION AND ORDER

Ariel Gomez is presently serving a thirty-five year sentence for the crime of murder. He petitions for a writ of habeas corpus, 28 U.S.C. § 2254, asking for a new trial. I deny the writ because Mr. Gomez has failed to demonstrate that the state court violated any federal law.

I.

On June 13, 1997, the night the Chicago Bulls won their fifth National Basketball Association championship, Mr. Gomez, then seventeen years old, and four of his friends were driving around the northwest side of Chicago, Illinois, in his mother's Nissan Pathfinder.[1] Jose Dominguez was driving, and, at the intersection of Cicero and Diversey, several men threw bricks and stones at the

---

[1] These facts are taken from Mr. Gomez's petition and from the order of the Illinois Appellate Court denying his appeal. *See People v. Gomez*, No. 1-98-4474, slip op. (Ill. App. Ct. Sept. 7, 2000) ("App. Order").



car. Mr. Gomez told Mr. Dominguez to pull over, and Mr. Gomez pulled a .45 caliber semiautomatic pistol from under the hood of the car. Mr. Dominguez drove back toward the intersection with Mr. Gomez in the passenger seat, and as the car approached the crowd of people at the intersection, Mr. Gomez says he fired once into the crowd. Other witnesses at the scene said that they heard anywhere from two to five shots. One shot hit and killed Concepcion Diaz.

Mr. Gomez and his friends fled the scene, wrecked and abandoned the car, and returned to Mr. Gomez's house. Mr. Gomez claims he stashed the gun behind the television set in his home. A witness gave the police the license number of the Pathfinder, and the police found it crashed into a wall with bricks tied to the accelerator. They caught up with Mr. Gomez and his friends at the Gomez home, where all five were arrested, and each later gave a statement to the police. Mr. Gomez told the police where they would find the gun, and the police recovered it during a consensual search.

Mr. Gomez was charged with first-degree murder and tried in a joint bench trial with his four co-defendants. Although the cases were technically severed, the judge heard evidence against all of the defendants simultaneously. None of the defendants testified at trial, although all of their statements to the police were admitted. In his statement, Mr. Gomez told the police that "no one in the group on the street had any guns or weapons," but forensic

evidence showed that the bullet that killed Mr. Diaz could not have come from the gun recovered from Mr. Gomez. The trial judge accepted this finding, but speculated that there was another gun that Mr. Gomez had concealed that fired the fatal shot. Mr. Gomez was convicted of first-degree murder, and Mr. Dominguez was found guilty of the same crime on a theory of accountability. The other three co-defendants were acquitted. Mr. Gomez appealed to the Illinois Appellate Court, where he challenged the sufficiency of the evidence and argued, among other things, that he did not knowingly and voluntarily waive the right to testify and that his trial counsel was ineffective. He lost, and the Illinois Supreme Court denied his petition for leave to appeal on January 29, 2001.

Mr. Dominguez also took his case before the Illinois Appellate Court, and eight months after the court affirmed Mr. Gomez's conviction, the Court held that there was insufficient evidence of *Mr. Gomez's* guilt on the murder charge to hold Mr. Dominguez accountable. *See People v. Dominguez*, No. 1-98-4519, slip op. at 11-12 (Ill. App. Ct. May 17, 2001). The same judge presided over the *Gomez* and *Dominguez* panels. Because the trials were technically severed, the evidence was considered separately against each defendant. The evidence against Mr. Dominguez was virtually identical to the evidence against Mr. Gomez; the only difference was that Mr. Dominguez's own statement to the police was admitted. Portions of Mr. Gomez's statement were admitted as to Mr.

Dominguez, *id.* at 8, but not Mr. Gomez's statement that nobody else in the crowd had any weapons. The appellate court found that the trial court had improperly inferred, in the absence of any evidence that Mr. Gomez was the only shooter, that Mr. Gomez must have used another gun and disposed of it. *Id.* at 12.

II.

It is unjust that Mr. Gomez should sit in prison, convicted of murder, while his co-defendant should be cleared of it on the grounds that one cannot have accomplice liability if the principal --Mr. Gomez--is innocent. However, I am obliged to confine my inquiry to the possible violation of federal law by the state courts, and there is no federal right to a consistent verdict. The Supreme Court has held that an accomplice may be convicted of aiding and abetting a principal who has been acquitted. *Standefer v. U.S.*, 447 U.S. 10, 19 (1980); *U.S. v. Lahey*, 55 F.3d 1289, 1296 (7th Cir. 1995). This rule holds true in both jury and bench trials. *Harris v. Rivera*, 454 U.S. 339 (1981). In fact, the Constitution does not even require that verdicts rendered against a single defendant be consistent; the Supreme Court has stated that a defendant may be convicted of one crime and acquitted of a second which is a necessary condition of the first. *U.S. v. Powell*, 469 U.S. 57, 69 (1984); *U.S. v. Sims*, 144 F.3d 1082, 1084 (7th Cir. 1998) (holding that "inconsistent verdicts in criminal cases do not give rise to a right to a new trial"). Following these clear

4

guidelines, I must ignore the inconsistency of the Illinois Appellate Court and turn to the two constitutional issues raised by the petitioner.

III.

Petitioner argues, first, that his constitutional right to testify in his own defense was denied by the state trial court. This claim is not supported by the trial record. To be sure, Mr. Gomez did not testify at his trial. But "courts have no affirmative duty to determine whether a defendant's silence is the result of a knowing and voluntary decision not to testify." *U.S. v. Thompson*, 944 F.2d 1331, 1345 (7th Cir. 1991). A trial court must permit a defendant to testify if he makes his desire known to the court (*Ortega v. O'Leary*, 843 F. 2d 258, 261 (7th Cir. 1988)), but nothing in the record here suggests that Mr. Gomez made a similar demand. Petitioner's brief cites cases from other jurisdictions which may require explicit waiver of the right to testify, but the rule in this circuit is clear. If Mr. Gomez's lawyer did not inform him of his right to testify, this is a matter of ineffective assistance of counsel, discussed below. However, in the absence of any evidence that Mr. Gomez was somehow prevented by the court from taking the stand, I have no basis for finding that his failure to testify was anything other than a tactical decision he now regrets.

IV.

Petitioner also argues that he was denied the effective

assistance of counsel because his lawyer failed to put him on the stand. As I noted in my order of May 13, 2002, Mr. Gomez has procedurally defaulted on this claim, and I may consider its merits only if he can "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The new evidence in this instance would be Mr. Gomez's testimony.

Mr. Gomez's case does not meet this extremely strict standard. He admits to firing a gun in the direction of the victim. He admits to crashing his mother's vehicle in an attempt to keep the police off his trail. Numerous witnesses, including Mr. Gomez's co-defendants, observed him firing toward the victim. Mr. Gomez himself stated that no one in the vicinity other than himself had a gun. While ballistic evidence shows that the gun found in Mr. Gomez's mother's house was not the gun that killed the victim, it is plausible that Mr. Gomez used a different gun to commit the murder. The addition of Mr. Gomez's testimony, which a jury might or might not believe, to this body of evidence would not render an acquittal likely enough to meet the *Schlup* standard. A reasonable juror could conclude that Mr. Gomez was lying on the stand, that he disposed of the murder weapon before his arrest, and that he was guilty of murder. Thus, under *Schlup*, I am not permitted to reach the merits of Mr. Gomez's defaulted ineffective assistance of counsel claim.

V.

Because each of Petitioner's constitutional claims is either without merit or defaulted, his petition for a writ of habeas corpus is hereby DENIED.

ENTER ORDER:

*Elaine L Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: November 20, 2002